**E-Filed 9/19/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID LONGAKER, an individual,<br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BOSTON SCIENTIFIC CORPORATION, a corporation<br>　　　　　　　　Defendant. | Case Number 5:11-cv-01827 JF (PSG)<br><br>**AMENDED**[1] ORDER[2] GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TERMINATING REMAINING MOTIONS AS MOOT<br><br>[Re: Docket No. 25] |

　　Plaintiff David Longaker ("Longaker") brings this action against his former employer Boston Scientific Corporation ("Boston Scientific"). He asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and retaliatory conduct and hostile environment harassment in violation of Cal. Gov. Code § 12940 *et seq*. Longaker seeks

---

[1] This amended order has been issued to correct a non-substantive clerical error in the numbering of the footnotes of the original order.

[2] This disposition is not designated for publication in the official reports.

compensatory and punitive damages. Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on July 29, 2011. For the reasons set forth below, the Rule 12(b)(3) motion will be granted, and the remaining motions will be terminated without prejudice.

## I. BACKGROUND

In September 2007, Boston Scientific hired Longaker as a sales representative, and the parties entered into a written employment agreement for a two year term. Compl. ¶¶ 7-8; Declaration of David P. Longaker in Opposition to Motion to Dismiss for Improper Venue and for Failure to State a Claim ("Longaker Decl."), Ex. 1. At the end of this term, Boston Scientific offered to extend Longaker's employment for a new term of three years. Compl. ¶¶ 8-9. The parties executed a renewed employment agreement on or about September 30, 2009. Longaker Decl., Ex. 2. Both of the employment agreements contain forum-selection clauses and choice-of-law provisions with respect to all employment-related disputes. *Id.* at Exs. 1, 2.

In or around April 2010, Longaker disclosed to representatives from the Boston Scientific human resources department that one of the company's field clinical representatives, Lindsey Lubbering, was engaging in a romantic relationship with a company client. Compl. ¶ 12. Longaker told the human resources representative that he believed Boston Scientific intended to force him out of his position so that the position could be given to Lubbering as a reward for her relationship. *Id.* Shortly thereafter, Longaker was placed on a performance improvement plan for failing to meet his sales goals, and he subsequently was terminated in September 2010. *Id.* ¶¶ 13-22. Longaker alleges that he was terminated for complaining that Lubbering was promoted because of the romantic relationship.

## II. STANDARD OF REVIEW

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *See also Alperin v. Franciscan Order*, No. C-99-4941-MMC, 2009 WL 2969465, at *2 (N.D. Cal. Sep. 11, 2009). In a facial attack, the moving

2

party asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. *Id*. In a factual attack, the moving party disputes the truth of the allegations in the complaint, which otherwise would be sufficient to invoke federal jurisdiction. *Id*. Here, Boston Scientific brings a facial attack, arguing that the Court lacks subject matter jurisdiction. The burden of establishing subject matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

In an action based upon diversity of citizenship federal law governs the enforceability of a forum-selection clause.[3] *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir. 1988). On a motion to dismiss for improper venue brought under Fed. R. Civ. P. 12(b)(3), the pleadings are not accepted as true and the court may consider extraneous facts. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th

---

[3] Longaker alleges that he is a citizen of California. Compl. ¶ 2. Boston Scientific is a resident of Delaware and Massachusetts for diversity purposes. Notice of Removal at 3.

3

Case No. 5:11-cv-01827 JF (PSG)
AMENDED ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TERMINATING REMAINING MOTIONS AS MOOT
(JFLC1)

Cir.1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir.1996).

### III. DISCUSSION

Boston Scientific argues that the Northern District of California is an improper venue in light of the forum-selection clause contained in Longaker's employment contract,[4] which states that all disputes related to Longaker's employment shall be heard in Minnesota and governed by Minnesota law.[5]  Longaker opposes the motion, maintaining that in fact his employment contract consists of two documents: (1) the Employment Agreement, and (2) the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees ("ACE")–the latter of which states that disputes may be brought in the state of Longaker's primary work location, which in this case is California.[6]

Longaker contends that because the forum-selection clauses in these two documents are in conflict, California's choice-of-law rules should determine the issue of venue.  Specifically, he argues that it would contravene California's public policy to enforce the forum selection clause in the Employment Agreement because Minnesota does not recognize claims for breach of the covenant of good faith and fair dealing or the theory of supervisory favoritism in the context of alleged workplace harassment.  In reply, Boston Scientific asserts that the ACE is limited only to intellectual property issues and that the forum-selection clause contained therein simply is

---

[4] All references to Longaker's employment contract refer to the 2009 agreement unless otherwise indicated.

[5] Boston Scientific also argues that Longaker does not have standing to assert his claims because he was required to inform the bankruptcy court of the instant action upon filing his bankruptcy petition. Because it concludes that Longaker's claims are subject to dismissal on other grounds, the Court need not address this argument.

[6] Longaker is a resident of Gilroy, California.  Longaker Decl. ¶ 2.  At all times during his employment with Boston Scientific, he worked primarily from his Gilroy home, but he was headquartered at Boston Scientific's regional office in San Jose. *Id.* ¶ 6.  His direct supervisor and the co-workers in his sales group also were located in California (in Los Altos, Watsonville, San Jose, and Mountain View). *Id*.  During his employment, Longaker was required to make sales calls to Boston Scientific customers (and prospective customers) at Stanford Hospital and the Department of Veterans Affairs Hospital in Palo Alto, California. *Id.* ¶ 5.

4

Case No. 5:11-cv-01827 JF (PSG)
AMENDED ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TERMINATING REMAINING MOTIONS AS MOOT
(JFLC1)

inapplicable.

In relevant part, the Employment Agreement and the ACE provide as follows:

**(1) Employment Agreement**

    <u>**Entire Agreement.**</u> This Agreement and the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees signed by Employee simultaneously with this Agreement *constitute the entire agreement between the parties* with respect to Employee's employment with GSC,[7] and the parties agree that there were no inducements or representations leading to the execution of this Agreement and the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees except as stated in this Agreement. (Emphasis Added)

    <u>**Governing Law and Forum.**</u> Any disputes between the parties or Employee and GSC agents or employees relating directly or indirectly to this Agreement, or arising hereunder, or relating directly or indirectly to Employee's employment with GSC shall be governed by the laws cf the State of Minnesota regardless of the conflicts of laws rules of Minnesota or any other state. Employee consents to the exclusive jurisdiction of the state and federal courts of Minnesota for the resolution of any such disputes or claims and specifically waives any objection to such disputes or claims being brought and resolved exclusively in those courts. Employee agrees that he will not commence litigation against GSC or its agents and employees for such disputes in any court outside of the state of Minnesota.

**(2) ACE**[8]

    <u>**Introduction**</u>. During the Employee's career with Boston Scientific, the Employee may have access to or learn of confidential or proprietary information of Boston Scientific. The Employee also may learn of and work directly with customers, vendors, consultants and employees of these various businesses entities. For these reasons *this Agreement Concerning Employment (the "Agreement") is designed to protect the legitimate interests of all of the various businesses that comprise Boston Scientific.* (Emphasis Added)

    <u>**Governing Law/Consent to Jurisdiction**</u>. Although the Employee may work for Boston Scientific in various locations, the Employee agrees that this Agreement shall be interpreted and enforced as a Massachusetts contract and shall be interpreted and enforced in accordance with the internal laws of the Commonwealth of Massachusetts without regard to its conflict of law rules. Both parties agree that any action concerning this Agreement shall be commenced exclusively in the courts (including the Federal Courts) in either (i) the Commonwealth of Massachusetts or (ii) the state of the Employee's last (or, if

---

[7] GSC (Guidant Sales Corporation) is a wholly-owned subsidiary of Boston Scientific Corporation, and the legal employer of Longaker under the terms of the Employment Agreement.

[8] In addition to the relevant paragraphs excerpted herein, the ACE includes a rider discussing specific non-compete restrictions related to an employee's work on behalf of Boston Scientific in various states, including California. Longaker asserts that the rider strengthens his argument that California law should govern this dispute.

Case No. 5:11-cv-01827 JF (PSG)
AMENDED ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TERMINATING REMAINING MOTIONS AS MOOT
(JFLC1)

    still employed, the employee's current) primary work location for Boston Scientific.

Longaker Decl. Ex. 2.

    Although the Employment Agreement states that "the entire agreement" includes the ACE, the plain language of the latter agreement indicates that the ACE governs proprietary issues only in that, "(the 'Agreement') is designed to protect the legitimate interests of all of the various businesses that comprise Boston Scientific." *Id.* Because this case is based entirely on Longaker's claim of wrongful termination, it comes within the purview of the Employment Agreement, and the forum-selection clause in that agreement governs.

    Indeed, the forum-selection clause contained within the ACE states that it refers only to that agreement: "Both parties agree that any action *concerning this Agreement* shall be commenced exclusively in the courts (including the Federal Courts) in either (i) the Commonwealth of Massachusetts or (ii) the state of the Employee's last (or, if still employed, the employee's current) primary work location for Boston Scientific." *Id.* (emphasis added). In light of the express language, the forum-selection clauses do not appear to be in conflict.

    Longaker argues alternatively that requiring him to litigate in Minnesota would be unconscionable. He reasons that it is against public policy to require an employee to litigate his claims in one forum while the employer is allowed to choose between multiple forums when litigating its own claims. Longaker asserts that Boston Scientific is more likely to have claims arising under the ACE, which would permit it to bring suit on its home turf in Minnesota or in any jurisdiction in which the employee defendant works.

    Relying on cases from the Supreme Court and this district, Longaker argues that courts have refused to enforce uneven forum-selection clauses in the past. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15-17 (1972); *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1174 (N.D. Cal. 2002). However, the forum-selection clause in *Comb* was deemed unconscionable because it was contained within a contract that was adhesive and was unconscionable in other respects as well, and thus was unreasonable in light of the totality of the parties' circumstances. 218 F. Supp. 2d at 1176-77. There is no evidence that the contract at issue here was presented to

6

Case No. 5:11-cv-01827 JF (PSG)
AMENDED ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE AND TERMINATING REMAINING MOTIONS AS MOOT
(JFLC1)

Longaker on a take-it-or-leave-it basis. Although Longaker claims that he had essentially no time to review the agreement prior to signing,[9] the forum-selection clauses contained in the 2007 and 2009 agreements are identical. Longaker reasonably was aware of the provisions of the 2007 agreement and could have expressed any concerns prior to renewing his employment. Moreover, where as here the contracting parties are experienced in business affairs, there is less concern about contracts of adhesion. *Bremen*, 407 U.S. at 9. Longaker has worked in the medical device industry for twenty-five years. Compl. ¶ 6.

Nor has Longaker shown that requiring him to litigate in Minnesota is unreasonable as a practical matter. While he asserts that he cannot afford to travel continuously from California to Minnesota,[10] Longaker need not physically be present at all times during the pendency of litigation. To the extent that his personal participation is required, he may make telephonic appearances before the Minnesota court, and he may consult with counsel through e-mail and remote conferencing technology.

Finally, there is no showing that enforcing the forum-selection clause would contravene California's public policy. While Longaker points out correctly that Minnesota does not recognize a claim for breach of the covenant of good faith and fair dealing, such claim would add nothing to his breach of contract claim under California law because "[t]he covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607 (2004) (quoting *Guz v. Bechtel National, Inc*. 24 Cal.4th 317, 349-50 (2000)).

Likewise, Longaker's claim that Minnesota will not recognize a retaliation claim based on perceived supervisory favoritism lacks merit. Longaker points to *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006), as evidence that Minnesota does not recognize such claims. However, *Tenge* concerned alleged favoritism based upon consensual sexual conduct

---

[9] Longaker asserts that the contract was handed to him in a parking lot on September 30, 2009, and that he was asked to sign the agreement on the spot. Longaker Decl. ¶¶ 9-11.

[10] *See, e.g.,* Longaker Decl. ¶¶ 14-15.

between an employee and a supervisor. Longaker alleges that Lubbering was favored not because she was engaging in sexual conduct with her supervisor but because she was involved in a romantic relationship with a client. In *McGinnis v. Union Pacific Railroad*, 496 F.3d 868, 873-74 (8th Cir. 2007), a case decided subsequent to *Tenge*, the Eighth Circuit recognized that such a claim is viable in cases of widespread sexual favoritism. This ruling is consistent with California law, which recognizes that widespread sexual favoritism can give rise to a sexual harassment claim. *Miller v. Dep't. of Corrs.*, 36 Cal.4th 446, 466 (2005).

### IV. ORDER

Accordingly, the Court finds no compelling reason why the forum-selection clause contained in the employment agreement should not be given full effect. Good cause therefor appearing, the motion to dismiss for improper venue is GRANTED, and the remaining motions shall be terminated as moot. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: September 19, 2011

_____
JEREMY FOGEL
United States District Judge